## Venable v. Commonwealth.

(Decided Sept. 29, 1933.)

NAPIER & EBLEN for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

About 7:30 p. m. Sunday October 23, 1932, Andy Venable slew Alex Dooley. Indicted and tried for murder, Venable was convicted of manslaughter and his punishment fixed at 21 years in the penitentiary.

Venable admits the killing, but claims he did it in self-defense, and that Dooley had shot twice at him before he shot at all. Upon this appeal his grounds for reversal are that the verdict is palpably against the

evidence, that the court erred in overruling his motion for a directed acquittal, and he also relies on some newly discovered evidence, so we shall discuss these matters briefly.

## The Evidence.

These men were neighbors. Some trouble had arisen between them over a school election. Later Dooley was elected principal of the district school. Venable's daughter Emma attended this school, and Venable filed with the board, of education charges of improper conduct of Dooley towards Miss Emma. The board heard the charges and acquitted Dooley.

On the day of the homicide, Venable, with his brother, his brother-in-law, and his son passed Dooley's house on two or three occasions, but, aside from addressing some vile epithets to Dooley, did nothing. Dooley, with his wife, their two children, and his wife's sister and her husband, went to Needmore Church that night. Services had begun when they arrived, and the congregation was engaged in prayer. The Dooley party when they got out of their automobile, started for the church, the women and children in front, Dooley and his brother-in-law following. They passed Venable without anything being said. There is a vestibule to the church about 6 feet square. There are swinging doors at the front of this vestibule, and opposite them are other swinging doors leading into the church proper. The Dooley party had halted in this vestibule and were waiting for the prayer to be concluded. Venable had followed them and did something to cause Dooley to say several times, ''Don't do that Andy,'' and to push the women and children into the church. Shooting began; several shots were fired. Venable was shooting a .38 special. Soon men came running from the church. Dooley was sinking; he had a .32 pistol in his right hand. A Mr. Bond took it from him ran outside and fired it off two or three times in his excitement. A Mr. Price took the pistol from Bond and without examining it broke it down, thus throwing out the shells or loads that were in it. So, aside from what Venable says, we have no evidence Dooley fired a shot. One shot fired by Venable went through the church door, the other through Dooley's heart. There were other shots fired, but no one save Venable testifies who fired them. Dooley was shot through the ring finger of his left hand by a

·small bullet, as it went through that finger, cut the ring that was upon it, yet did not break the bone. Dooley also had a wound on his right hand that may have been made by a bullet, at least the witnesses say so. There is evidence indicating some one was shooting from the corner of the church to the right as you approach it. There is evidence there are upon the front wall at that corner of the church two smoked or blackened places, and there is evidence indicating these spots were caused by the discharge of a pistol near thereto. · On the front wall of the church to the left of a person facing it, and about midway between the door and the. left corner there are scars that appear to have been made by bullets that struck there and glanced off. If by prearrangement Venable had a confederate shooting from that corner, his alleged self-defense is destroyed.

There were ten or fifteen men and boys in front of the church when Dooley's party started in. Something alarmed them; they suddenly bethought themselves of business elsewhere, and hastened to attend to it. No witness testifies he saw the shooting except Venable. Therefore he says his account of it being uncontradicted must be accepted. True, no eyewitness contradicts him, but the other evidence does.

When Dooley passed Venable, why did Venable follow him? He makes no claim he was going into church. What was Venable's business standing out there in his shirt sleeves after services had begun? He says he had stopped there to pay Mr. Baker for a load of coal, but when Mr. Baker was on the stand Venable failed to ask him about that. Why did Baker run when Venable started after Dooley? Venable was stripped for action, he was armed and accoutered and it looks like his business was murder. He does not say Dooley moved after he shot him, but says Dooley began to "sink down." Dooley fell in this vestibule with his feet against the inner door and one of his arms hanging out the outer door.

Things have come to a pretty pass when a citizen intent on worship is followed and shot down in a sacred temple of Almighty God. The evidence fully supports the verdict. See Simmons v. Com., 207 Ky. 570, 269 S. W. 732.

### Newly Discovered Evidence.

At the time Venable and his party passed Dooley's

home that afternoon, he says Dooley ran out with a rifle or a shotgun. Mrs. Dooley was recalled and said there was no rifle there. Her sister was recalled, and she says there was neither a rifle or a shotgun there that she saw. Now they propose to show by Charlie Manious and Hampton Manious, two witnesses who had testified on this trial, that they saw a pump shotgun there that night.

That evidence if true would only go to contradict Mrs. Dooley's sister upon a collateral matter, and courts do not reverse judgments to permit the introduction of such evidence, and courts do not usually reverse judgments to permit the introduction of evidence that was in the breasts of witnesses who testified on the trial, as that shows no sort of diligence had been exercised.

Judgment affirmed.